In re RENFRO–WADENSTEIN et al.

OSBORN v. KETCHAM & ROTHSCHILD, Inc., et al.

KETCHAM & ROTHSCHILD, Inc., v. OSBORN.

ROBERT W. IRWIN CO. v. OSBORN.

No. 6535.

Circuit Court of Appeals, Ninth Circuit.

Nov. 9, 1931.

The opinion of the court below is reported in 47 F.(2d) 238.

Eggerman & Rosling, D. G. Eggerman, and Edw. L. Rosling, all of Seattle, Wash. (W. S. Greathouse, of Seattle, Wash., of counsel), for appellant trustee.

Poe, Falknor, Falknor & Emory, of Seattle, Wash., for appellees, Ketcham & Rothschild and R. W. Irwin Co.

Before WILBUR and SAWTELLE, Circuit Judges, and WEBSTER, District Judge.

WILBUR, Circuit Judge.

This is an appeal by the trustee in bankruptcy from a turnover order of the trial court requiring the delivery to appellees and cross-appellants of certain furniture alleged to have been owned by them and held by the bankrupt upon consignment. The trial court, however, declined to direct the trustee to turn over to the appellees the proceeds of the sale of other furniture similarly owned by them and held in the same manner at the time the bankruptcy proceedings were instituted, which was sold by the receiver in bankruptcy under an agreement that the disposition of the proceeds of the sale should await the determination of the court. From this portion of the order, the claimants take a cross-appeal. As there is substantially no dispute in the testimony, it is unnecessary to state the facts in detail. It is sufficient to say that each of the appellees and cross-appellants was a manufacturer of furniture, and the bankrupt was a retail dealer in furniture, and that a large amount of indebtedness had been incurred by the bankrupt for furniture sold to it by each of the appellees. A part of this indebtedness ($15,000) to appellee Ketcham & Rothschild was by agreement treated as a frozen asset, upon which interest was paid. The bankrupt was slow in making his payments and appellees were each unwilling to ship further consignments of furniture under the existing arrangement. The bankrupt was expanding its business by going into a new store with larger accommodations, requiring greater stock. The new agreement with appellee Robert W. Irwin Company was in writing dated April 1, 1928. The new agreement referred to between appellee Ketcham & Rothschild, Inc., was dated March 30, 1928. The agreements are practically identical in terms, so far as their effect is involved in the matter before us, and may therefore be considered together. The agreements are quite lengthy, and their exact terms are extremely important in view of the contention that, although they clearly purport on their face to be agreements for a consignment of furniture, they are in fact conditional sales agreements, and therefore void for lack of recordation. We will summarize the general agreement and quote two paragraphs principally relied upon by the appellant in support of his claim that the agreement was in fact an agreement for a conditional sale of furniture theretofore or thereafter delivered to the bankrupt by the appellees.

The agreement of March 30, 1928, with Ketcham & Rothschild, Inc., provided in paragraph I that it would ship goods on consignment to Renfro-Wadenstein, a corporation, f. o. b. Chicago, invoiced to the party of the second part and charged provisionally to the consigned account of the party of the second part; that the maximum amount of goods so shipped should be satisfactory to Ketcham & Rothschild, Inc.; that the bankrupt should accept delivery of all goods so shipped and pay the freight and carriage charges immediately on arrival, insure the goods in the name of Ketcham & Rothschild against damage by fire or water, care for the goods for Ketcham & Rothschild, pending the sale thereof, and pay the expenses thereof; that the goods should be held exclusively for the resale for the account of Renfro-Wadenstein at not less than the net invoice price. The bankrupt was entitled to retain "by way of commissions on sales made all surplus obtained and collected by it on the specific items sold over and above the invoice price after such price had been remitted to Ketcham & Rothschild," provided that the bankrupt should keep an itemized record of the sale of all such consigned goods separate and distinct from other sales, and deliver twice a month a record of all such sales, including a list of items sold, etc. It was also the duty of the bankrupt to remit all money collected from each purchaser until the amount due them had been paid in full. It is then provided: "In case party of the second part, due to its not having received from its customer payment for goods sold, shall not be able to make payment in cash, it shall give the party of the first part a demand note collateraled by the assignment of accounts receivable at least equal to the amount of payment due for merchandise sold. Party of the second part [the bankrupt] does hereby guarantee the credit of all customers and purchasers and the collection of all accounts created on the sale of such goods."

This is one of the clauses particularly relied upon by the appellant as showing an absolute agreement on the part of the consignee to pay for the goods. But this clause does not require separate consideration. It

was further agreed that the bankrupt should pay 7 per cent. after 90 days from date of shipment as a carrying charge to be paid semiannually. It was further provided that the method of invoicing the consigned goods and the method of charging on the books of the Ketcham & Rothschild, Inc., should not be deemed in any way to modify or discontinue the agreement "or prevent said consigned goods from being held, handled and remitted for under and according to the terms thereof." It is agreed that if Ketcham & Rothschild at any time required the return of any of the goods, the bankrupt will crate and place the same on cars at Seattle. Section 10 of the agreement, much relied on by the trustee, is as follows: "This contract shall continue in force and effect until terminated by one or both of the parties hereto by written notice given to the other, but in case of such termination party of the first part shall have the right, at its option to require party of the second part to keep and pay for the consigned goods then remaining on hand at the invoiced price thereof, party of the second part to be entitled to the following terms: Twenty-five (25%) per cent thereof every thirty (30) days until fully paid." ·

The agreement further provides:

"The consigned goods or the accounts representing the same and the proceeds thereof shall continue to belong to and be the property of said party of the first part until remittance therefor shall have been made to and received by said party of the first part as herein provided.

"In the event that party of the first part [Ketcham & Rothschild] shall not elect to sell said goods to party of the second part, then upon termination of the contract it shall be the duty of party of the second part to crate and place on cars at Seattle, unless otherwise directed by the party of the first part."

If this agreement is one for a conditional sale rather than an agreement for consignment, it is void as to creditors under the law of the state of Washington, which provides that agreement for conditional sale must be recorded within ten days after execution, where possession is given the purchaser. Remington's Compiled Statutes of Washington, § 3790; Remington & Ballinger's Code of Wash., § 3670. It will be observed that, while the agreement provides with meticulous care that the title to the goods thereafter to be furnished is reserved to the consignor, or seller, as the case may be, the only price placed upon the goods is the invoice price to be paid by the purchaser or consignee, as the case may be, and no arrangement or agreement is made with reference to the price at which the goods are to be sold other than the provision that all amounts received from such sale over and above the invoice price and certain charges belong to the consignee, or purchaser. In the event of sale on credit, the bankrupt becomes obligated to pay the consignor the price thereof, and such obligation is evidenced by a note payable on demand and secured by "assignment of accounts receivable at least equal to the amount of payments due for merchandise sold." Undoubtedly it was the intention that the obligation of the purchaser to pay should be used as such collateral for such sale, although the agreement does not expressly so provide.

To maintain the claim that the agreement is a conditional sales contract and not a consignment, great stress is laid upon the option given to the consignor to terminate the contract and require the consignee to pay for the goods on hand. In such a case, the consignee becomes bound to take and pay for the balance of merchandise on hand at the option of the consignor. It has been held in a number of cases that such an agreement is insufficient to convert what would otherwise be a contract of agency or consignment into a conditional sale. In In re Galt, 120 F. 64, 65, the Circuit Court of Appeals for the Seventh Circuit was dealing with an agreement for the consignment of wagons for sale on commission, somewhat similar to the agreements in the case at bar. The agreement provided: "All wagons not sold within 12 months were, at the option of the company, [consignor] to be paid for by the other party [consignee] in cash or by note, or to be turned over to the company."

In referring to this clause, Judge Jenkins, speaking for the court, said: "The clause in the contract giving an option to the company to require Galt to give his note, or to pay in cash, or to store, subject to the order of the company, the goods not sold within 12 months, is probably the strongest clause in the contract to indicate a sale; but, as suggested by the supreme court of Illinois in Lenz v. Harrison, [148 Ill. 598, 36 N. E. 567], supra, while it might have such force considered alone, taking it with the whole contract, it was seemingly incorporated to compel the agent promptly to sell, and report sales within the time stated."

A similar contract was considered by the Circuit Court of Appeals of the Sixth Circuit in Mitchell Wagon Co. v. Poole, 235 F. 817. The full agreement was set out in the

opinion of the court by District Judge Cochran. The agreement contained a clause similar to that in In re Galt. It required the consignee to either pay cash for the wagons, give their note therefor, or store the wagons in good order at the option of the consignor at the end of 12 months. It was held that the contract was one of agency, and not a conditional sale.

In John Deere Plow Co. v. McDavid, 137 F. 802, the Circuit Court of Appeals for the Eighth Circuit, in an opinion by District Judge Riner, held that a similar contract was a mere consignment or agency pending the maturing of the sale at the end of twelve months.

In Reliance Shoe Co. v. Manly (C. C. A.) 25 F.(2d) 381, 383, cited by the appellant, the agreement there in question contained the following provision: "We further agree that we will pay you in any event for all merchandise ordered and received by us and remaining unsold three months from the date of shipment."

The consignee had no right to return the merchandise and be discharged from liability, and no right was reserved in the event consignor refused to accept the unsold merchandise and terminate the contract. The bankrupt was required at all events to pay the shoe company the invoice price of the shoes either in cash, or, in the event the merchandise was returned and sold by the consignor at a less price, consignee was required to pay the difference. The absolute agreement to pay in any event distinguishes that case from the case at bar.

In the case at bar, we find nothing in the contract which prevents it being construed to be what it was in fact declared to be, i. e., an agreement for the consignment of goods to an agent for sale. The criteria of a conditional sales contract are stated by Circuit Judge Sanborn in In re Columbus Buggy Co. (C. C. A.) 143 F. 859, 860, as follows:

"A conditional sale is one in which the vesting of the title in the purchaser is subject to a condition precedent, or in which its revesting in the seller is subject to a failure of the buyer to comply with a condition subsequent.

"An agreed price, a vendor, a vendee, an agreement of the former to sell for the agreed price and an agreement of the latter to buy for and to pay the agreed price are essential elements of a contract of sale."

In the agreements in the case at bar, there was no agreement to buy except upon the election of the consignor. It follows that the order of the lower court in relation to the turning over to appellees of the goods shipped on consignment after the execution of the contracts in question was correct and should be affirmed. The cross-appeal raises the question as to the rights of the parties in and to the furniture that had been sold by the appellant to the bankrupt before the execution of the above-mentioned agreements, which we will hereinafter refer to as the "consignment agreements," and to the proceeds resulting from the sale thereof by the bankrupt. In each of the consignment agreements, provision was made with reference to the disposition of the furniture then in the possession of the bankrupt which had been sold to it by the respective consignors. In each agreement it is provided that title thereto should be restored to the seller and thereafter held by the bankrupt under the terms of the consignment agreement in the same manner that furniture subsequently shipped thereunder was to be held. There was, however, a distinction between the two agreements. In the case of Ketcham & Rothschild, the amount of furniture then in the possession of the bankrupt which had been sold to it by Renfro-Wadenstein was less in value than the amount of the indebtedness due from the bankrupt to Ketcham & Rothschild. It is therefore agreed that the entire amount of furniture should be retransferred, and that a promissory note should be given by the bankrupt for the difference between the value of this furniture and the amount of the indebtedness. It is clear that, in the case of Ketcham & Rothschild, sale was effected by the time of the execution of the consignment agreement. This agreement was not recorded. Subsequent to its execution, a bill of sale was executed by the bankrupt, Ketcham & Rothschild, and was recorded on April 24th, but more than ten days after the execution and delivery of the consignment agreement which, as to the furniture then in possession of the bankrupt, was, in effect, a bill of sale. The failure to record the consignment agreement within ten days after the sale was effected rendered the sale invalid under the law of Washington, which requires a recordation of the bill of sale within ten days after the sale is effected to be valid as to creditors. See Remington's Compiled Statutes § 5827, which is as follows: "No bill of sale for the transfer of personal property shall be valid, as against existing creditors or innocent purchasers, where the property is left in the possession of the vendor, unless the said bill of sale be recorded in the auditor's office of the

county in which the property is situated, within ten days after such sale shall be made."

See, also, Schloss v. Stringer, 113 Wash. 529, 194 P. 577.

■ With reference to the agreement of Robert W. Irwin Company, the situation is somewhat different. The consignment agreement contains the same provision as in that of Ketcham & Rothschild; namely, for the transfer of all the property then in the possession of the bankrupt that had been previously sold to it by Ketcham & Rothschild. It appears, however, that at the time of the transaction in question the amount of furniture in possession of the bankrupt previously sold to it by Robert W. Irwin Company greatly exceeded the amount of the indebtedness due the latter, and, upon the receipt of the consignment agreement which had been negotiated by an agent of Ketcham & Rothschild on behalf of the Robert W. Irwin Company, that company declined to accept the transfer of all such furniture, and insisted that only sufficient be transferred equal in amount at invoice prices to the indebtedness owing to it. The negotiations on this subject were continued throughout the summer and eventually, upon August 6th, a formal bill of sale was executed covering, by detailed description thereof, the furniture which was thus agreed should be retransferred to Robert W. Irwin Company and thereafter held on consignment by the bankrupt. This bill of sale was accepted on or before September 5th. Neither the original consignment agreement of April 1st nor the bill of sale to the Robert W. Irwin Company, executed in pursuance thereof, were recorded. Moreover, the bill of sale which was finally given was executed within four months of the date of bankruptcy. It is conceded by appellants that the bill of sale and consignment agreement as to the property covered by the bill of sale, considered as such, were void under the provisions of § 5827, Rem. Comp. Stat. of Washington, supra, unless it can be said that the property therein sought to be transferred was not left in possession of the vendor (§ 5827, supra). The argument of the appellant, Robert W. Irwin Company, is that, "after April 1st, 1928, the parties were operating under the consignment agreement. The property included in the Irwin bill of sale was not left in the possession of the vendor within the meaning of the above statute, but was left with it as consignee or bailee for the petitioner. Where previously the dealer had held the property as its own merchandise, subsequent to that date it was held by the dealer as con-

signee for the petitioner. Everything was done which, under the circumstances, could have been done to have denoted a transfer of possession from the bankrupt corporation to Renfro-Wadenstein as consignee for petitioner."

If this contention were sustained, the law could be evaded by the simple device of appointing the seller as the agent of the purchaser, the possession remaining with him both before and after the sale, without anything to indicate the change of possession. The purpose of the statute in question is obviously to prevent the deception of the public resulting from such a transaction by requiring that the notice of such a transaction be given to the public by recordation of the instrument by which the title was transferred. It follows that the trial court correctly determined that, as to the goods sold by Robert W. Irwin Company to the bankrupt previous to the execution of the consignment agreements, title remained in the bankrupt for the benefit of its existing creditors, and the order of the court refusing to turn over such furniture or the proceeds thereof must be affirmed.

It remains to consider whether or not the trial court erred in denying appellants' claims to the proceeds resulting from the sales of furniture by the bankrupt which had been received by it on consignment under and in pursuance of the consignment agreements. It is clear that if the consignment agreements were, as we have determined, mere agreements constituting the bankrupt an agent for the sale of the property of the appellants, appellants would be entitled to the proceeds of such sale. The difficulty in the case at bar is in the application of this rule. It appears that after the execution of the consignment agreements the bankrupt continued to sell furniture in its possession without any attempt to keep separate the money or evidence of indebtedness received on account of the goods so consigned, where written evidence of indebtedness was received from the purchaser. Instead of transferring these evidences of indebtedness to the appellants or holding them for their account, the bankrupt hypothecated such paper as had previously been its custom for the purpose of raising money for the conduct of the business and for making payments to its creditors, including appellants. The trial court concluded that the merchandise was so commingled with the sales of other furniture to customers of the bankrupt, and the amounts received from such sales so commingled with its other assets, that it was impossible to follow the proceeds

of such sales into the hands of the trustee, and, for that reason, denied the claim of the appellants for the transfer to them of the proceeds of the sale of the furniture held by the bankrupt on consignment.

At the time of the argument and in the briefs, appellant contended that many of the sales had been made by an assignee for the benefit of creditors and by the receiver in bankruptcy who had taken possession of the property before it came into the hands of the trustee, and that it was therefore possible to trace such assets. An examination of the record, however, at the time of the argument indicated this would be very difficult. In pursuance of the suggestion of the court at the time of the argument, the parties have stipulated and agreed that the proceeds in the hands of the trustee from the Robert W. Irwin Company's furniture shipped subsequent to the bill of sale aggregated an amount to a total of $2,536.30, and the total proceeds in the hands of the trustee derived from the sale of the furniture of Ketcham & Rothschild shipped subsequent to the bill of sale, and in pursuance of the consignment agreement, was $725.25. According to stipulation of the parties before the referee, the sum of $9,874.05 received from the sale of the assets of the bankrupt to Robert Grass are held pending the results of this litigation to pay such amounts as the court may find that the parties are entitled to. Accordingly, it is ordered that the order appealed from be modified to provide for the payment from said sum of $9,874.05 in the hands of the trustee the two above-mentioned items, to wit, the sum of $2,536.30 to the Robert W. Irwin Company, and the sum of $725.25 to Ketcham & Rothschild, Inc.

As so modified, the judgment is affirmed; each party to pay his own costs.