PERATA v. COMMISSIONER OF INTERNAL REVENUE.*

No. 8197.

Circuit Court of Appeals, Ninth Circuit.

April 13, 1937.

Leo J. McEnerney, of San Francisco, Cal. (J. Bruce Fratis, of San Francisco, Cal., of counsel), for petitioner.

Robert H. Jackson, Asst. U. S. Atty. Gen., and Sewall Key, J. Louis Monarch, Warren F. Wattles, and Frederick W. Dewart, Sp. Assts. to the Atty. Gen., for respondent.

Before WILBUR, MATHEWS, and HANEY, Circuit Judges.

HANEY, Circuit Judge.

This court is asked to review a decision of the Board of Tax Appeals determining a deficiency in the income tax of petitioner, by the petition presented.

The Italo Petroleum Corporation of America, hereinafter referred to as Italo, in 1928 entered into agreements with certain oil companies to purchase the assets of such companies. These agreements were entered into either in the name of Italo or one Myers, its agent. In the aggregate, delivery to the oil companies of 1,500,000 shares of preferred stock of Italo, 4,500,000 shares of common stock of Italo, and $3,433,228.53 cash, was required as the consideration for the transfer of the properties of the oil companies. Italo did not have available the cash payments required at this time.

On July 12, 1928, petitioner and others executed a syndicate agreement. After recital of the above facts, the agreement established a syndicate and created a manager thereof; provided that the syndicate fund would be raised by subscriptions thereto, the total of which would constitute the fund. It was further provided that the manager would procure from Italo an assignment of the contracts between Italo and the oil companies; that he would thereupon, out of the fund, make payment to the oil companies a part of the cash consideration specified in the contracts with the oil companies; that he would thereupon agree with Italo to transfer to Italo the assets to be received from the oil companies, under the contracts, in consideration of the transfer by Italo to him of approximately 12,000,000 shares of stock of Italo "to be issued * * * if, when and as permitted by the Commissioner of Corporations of the State of California." The manager was required to deliver to the oil companies the 1,500,000 shares of preferred stock and 4,500,000 shares of

---

*Rehearing denied 90 F.(2d) 498.

common stock, and to cause the balance of said shares to be sold for the highest price obtainable and in such manner as he may deem best. The proceeds of the sale of the stock were to be used (1) to pay the balance of the cash payment to the oil companies; (2) to pay expenses of the syndicate; (3) to pay the manager 2½ per cent. of the net profits, not exceeding $50,000; and (4) to distribute the balance to the syndicate members proportionately. The manager was given "sole and absolute discretion in all matters and things whatsoever pertaining to the subject matter of this agreement."

Of the total subscriptions to the syndicate fund of $1,911,375, petitioner contributed $125,000 and obtained therefor a 6.539794 per cent. interest therein.

The plan as specified in the syndicate agreement was slightly modified. In place of assignment of the contracts with the oil companies to the manager, Myers held all of them as agent of Italo. The stock was delivered to Myers, apparently as a consideration for the transfer of the assets the oil companies agreed to sell under the contracts. Myers received 4,500,000 shares of preferred stock and 7,500,000 shares of common stock of Italo, the total being 12,000,000 shares.

On August 13, 1928, an agreement was entered into between Italo and Myers wherein Myers was directed to transfer the stock, required by the contracts with the oil companies, to such companies, and to transfer the remainder of the stock, consisting of 3,000,000 shares of preferred stock and 3,000,000 shares of common stock, to an escrow agent "with instructions and authority to deliver the same to said Syndicate Manager ratably in proportion that the sums advanced by the Syndicate in payments on said properties bear to the total Syndicate obligation of $3,500,000.00 provided that the Syndicate Manager shall first agree to apply all proceeds from the sale of stock received by him to the payment of money obligations under said contracts."

On the same day, Italo, the escrow agent, the syndicate manager, and Myers entered into an agreement, wherein the escrow agent agreed to the terms regarding its duties as specified in the preceding agreement; the syndicate manager agreed to apply all proceeds from the sale of stock to the payment of the money obligations under the contracts with the oil companies;

and it was further provided that, "In the event of the Failure of the Syndicate to meet any money obligations under said contracts within five (5) days after their due dates, then upon notice signed by the Company and the Trustee, all further rights, benefits and privileges of the Syndicate shall thereupon cease and terminate and the Escrow Holder shall forthwith return and redeliver to the Trustee all of said stock then held by it which has not been delivered to the Syndicate Manager as herein authorized."

Myers delivered the stock to the oil companies, and the remainder of the stock to the escrow agent. The syndicate manager paid to Myers prior to September, 1928, from the syndicate fund $972,175. Myers thereupon directed the escrow agent to release to the syndicate manager a certain amount of stock. The syndicate manager then sold the stock through the agency of a stockbroker, who, at the direction of the syndicate manager, paid the proceeds to the escrow agent, which, at the direction of the syndicate manager, thereupon paid the proceeds to Myers. Myers then authorized release of additional stock. These operations were repeated until December 20, 1928. When Myers authorized release of stock in the hands of the escrow agent, the syndicate manager did not take possession of such stock, but directed the escrow agent to deliver the stock to the purchaser or his order, as it was sold.

On December 20, 1928, total sales of stock were as follows:

| | | |
|---|---|---|
| 1,912,859 shares | common stock for | $1,996,623.65 |
| 308,314 shares | preferred stock for | 247,623.33 |
| | | $2,244,306.98. |

This amount, in addition to the $972,175 paid out of the syndicate fund, is a total of $3,216,481.98. However, on December 20, 1928, the syndicate manager had paid to Myers $3,400,000. It does not appear from what source the difference came, but it is probable that it was paid from the syndicate fund.

On the same date the difference between the amount paid to Myers and the amount of cash payments called for by the contracts with the oil companies was $33,228.53. This deficit was extinguished as follows: Italo on December 7, 1928, declared a dividend on its preferred stock to holders of record on December 31, 1928, payable

January 20, 1929. Italo and Myers on December 20, 1928, advised the escrow agent that the syndicate had performed its part of the agreements and directed the escrow agent to deliver the balance of the stock in its hands, consisting of 1,087,141 shares of common stock and 2,691,686 shares of preferred stock, to the syndicate manager. Such delivery was made. In the year 1929 the balance of $33,228.53 was satisfied from the dividends paid on the preferred stock, totalling $51,843.50.

On December 20, 1928, the syndicate manager distributed to the members of the syndicate the total sum of $668,981.25, of which petitioner received $43,750. There remained in the hands of the syndicate manager an undisclosed amount of cash and all the stock delivered to him by the escrow agent as property of the syndicate.

Petitioner filed an income tax return for the year 1928 on the basis of cash receipts and disbursements, but reported no income from his interest in or participation in the syndicate.

Upon audit of petitioner's return, respondent, upon construction of the agreements, determined that the syndicate had purchased from Italo 3,000,000 shares of common and 3,000,000 shares of preferred stock at a total cost of $3,433,228.63. Upon this basis the cost of one share of common stock was $0.76293967, and the cost of one share of preferred was $0.38146983. Therefore the total cost of the stock actually sold was $1,577,008.50. The total selling price was $2,244,306.98. The difference would be the gross profit in the sum of $667,298.14. To this figure was added interest received and dividends and, from the total thus arrived at, a deduction for expenses was made and the balance was $714,121.10, constituting net income to the syndicate during 1928. Respondent determined petitioner's portion to be $43,312.96 from stock sales, and $3,390.56 from dividends, or a total of $46,703.52, and determined that there was a deficiency in the tax paid of $7,490.40.

The Board, on review, said:

" * * * The petitioners say that there was no sale of the stock to the syndicate. The facts establish that there was a sale. The stock was placed in escrow, the syndicate paid to the trustee certain of the funds advanced by its members and drew down a block of stock which was sold and the proceeds used to draw down additional stock and, in the words of the stipulation, 'These operations were repeated until December 20, 1928, when total payments were made by the syndicate manager to the trustee in the total sum of $3,400,000.' This, in our opinion, was a purchase and sale of Italo Corporation stock by the syndicate * * * "

The Board thereupon sustained respondent except that it allowed a deduction of $16,556.94 from the profit on the stock sales, constituting 2½ per cent. of the profits to which the syndicate manager was entitled under the syndicate agreement for his services. The Board determined petitioner's profit to be $42,230.17 from stock sales, and $3,390.56 from dividends, and determined the deficiency to be $7,252.19. Petitioner seeks review of that determination.

Respondent contends that petitioner was a member of a joint adventure, and taxable as a partner. We will consider the case on that assumption, without expressing our views as to the soundness of that contention.

Respondent asserts that there was a sale of Italo stock to the syndicate.

The distinction between a contract to sell and a sale is shown in 55 C.J. 39, § 5: "A contract to sell goods, as distinguished from a sale, is a contract whereby the seller agrees to transfer the property in goods to the buyer for a price which the buyer pays or agrees to pay, as where there is no price paid for the goods and no delivery of them * * * A contract to sell is merely a promise of an executory nature, and until it is executed gives merely a right of action for its breach, or specific performance, and does not pass the property in goods or chattels, whereas a sale is in the nature of a conveyance or transfer of title." See, also, In re Renfro-Wadenstein (C.C.A.9) 53 F.(2d) 834, 837.

It is apparent that there was no contract to sell the stock, for the syndicate made no promise to buy the stock, or even to sell it. The sole undertaking of the syndicate was that, if it sold any of the stock, it would apply all proceeds received to the payment of the money obligations under the contracts of sale.

The 2,221,173 shares sold by the syndicate were made available to the syndicate under circumstances which might be said to present the elements of a sale. The stock was made available for delivery upon payment therefor. But under no stretch of the imagination can it be said that the 3,-

778,827 shares delivered on or before December 20, 1928, were sold to the syndicate. Neither the syndicate nor any one on its behalf either paid or delivered money or its equivalent for the stock, or promised to do so. There could be no cause of action by Italo against the members of the syndicate for breach of promise other than the promise to apply the proceeds of all sales to the payment of the obligations owing the oil companies.

We believe the syndicate was merely the agent of Italo in the entire transaction. For the agent's services in raising the money with which the oil companies might be paid, they received a compensation which was the stock delivered on December 20, 1928. The syndicate realized no profit from the sale of the stock in 1928, for it was merely acting as the agent of Italo. Therefore, the Board erred in assessing the deficiency.

Reversed.