**EDGEWOOD SHOE FACTORIES, DIVI-
SION OF GENERAL SHOE CORPO-
RATION, v. STEWART.**
No. 9184.

Circuit Court of Appeals, Fifth Circuit.
Nov. 10, 1939.

A. F. Whiting, of Montgomery, Ala., for appellant.

Bernard Lobman and Silas D. Cater, both of Montgomery, Ala., for appellee.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

The proceeding was for reclamation of shoes delivered under a consignment contract. The defense was: That the contract, on its face, evidenced not a consignment but a sale; and that if sufficient on its face, as a consignment contract, it was a mere subterfuge for dealings, intended to result, and resulting in, sales so that as to the shoes sought to be reclaimed, claimant was not the owner, but a creditor for their price. Submitted to the referee on a record consisting wholly of the contract and an agreed statement of facts, there was a finding and order denying the claim. The District Judge on petition to review, affirmed, expressing the view: that the transactions between claimant and the bankrupt were not those of "bailment or agency; that the bankrupt had exercised dominion and control over the property inconsistent with either bailment or agency, or what is uniformly called a consignment; and that the title, if any, retained by the vendor in the shoes was for security and a fraud against the trustee." Appellant is here insisting that the record does not at all support this view; that the most that appellee can make out of the agreed statement is, that the bankrupt, in some particulars, departed from the letter of the injunctions of the agreement; but, that nowhere in the agreed statement, does it appear that any of these departures[1] were known, much less consented to, by appellant. Neither does it appear that any of these departures from the letter of the contract, were intended to be, or were breaches of its spirit, or that they in any manner, effected any substantial change in the relations the agreement created, or prevented the bankrupt from carrying it out with appellant, substantially as it had agreed to do. For, the same agreed statement shows that, just as had been agreed in it, a remittance was made to it on the first of each week, for all shoes sold the preceding week, whether for cash or credit, that is, as between consignee and appellant, there were no sales on credit, they were all for cash, and the consignee accounted in cash to the appellant, for all of the shoes sold, strictly under the terms of the agreement. Thus, it appears, that such departures as there were from the letter of the agreement, were not made known to appellant, but appellant supposed, and had a right to suppose, since settlements were being made exactly as agreed, that the agreement was being carried out strictly as made.

In addition to these departures, appellee relies on the fact that the agreed statement shows that in some instances, appellant issued to the bankrupt, a credit memo, at the invoice price, for defective shoes, but the same agreed statement shows that remittances were made to appellant on account of sales, before the customer had returned the defective shoes to the bankrupt, and the bankrupt had made claim on appellant, on account of the defects. Appellee relies too on the fact, that no sepa-

---

[1] These departures, as the agreed statement shows them, are two: (1) that the moneys received from the sale of shoes were not kept in a separate account, but were mingled with funds of the company in the bankrupt's general account, and remittances were made to appellant from that account; (2) that shoes of appellant were sold on credit in the same manner as shoes of other brands; that no accounts receivable were segregated or separated, as property of the appellant, and the consigned shoes were sold for cash or credit, at such prices as the bankrupt saw fit, whether under cost or not.

rate tax assessment was made on behalf of appellant, and that no shoes were ever returned. As to the taxes, appellant counters that the agreement expressly provided, that the consignor was to pay no taxes, accruing on account of the handling of the shoes, and that the consignee would have no authority to bind consignor to pay them. While as to the fact that no shoes were returned for credit at the invoice price, appellant points to the fact that the consignment contract contains no agreement, either that the consignee should buy any of the shoes or should return any. It merely provided that the shoes were sent on consignment, with the right in the consignee, to sell the shoes, to return them from time to time, under a liquidated damage agreement to cover broken lot and shop wear losses, or to cancel the contract and return them all, free of the liquidated damage clause. Pointing to the fact that, as agreed in the contract, insurance was carried on the stock of merchandise, made payable jointly to the bankrupt and to appellant as their interest might appear; that payments were made weekly in cash as provided in the contract, and no effort was made by the consignee to involve the consignor in his credit transactions; and, finally, that no goods were returned under the return privilege, appellant insists; that, these facts show, not disregard of but compliance with, the terms of the contract, and establish that the relation began and continued as one of consignment.

Finally, appellant urges upon us, that the most strained construction cannot spell out of the contract by itself, or taken in connection with the agreed facts, a single word which points or tends to point toward, an agreement or obligation on the part of the consignee to buy from consignor or pay him for one single pair of shoes, and that when on March 10, 1939, appellant filed notice terminating the contract and asking the return of its shoes, the consignee should have returned them, and having failed to do so, the reclamation petition should have been granted.

We agree with appellant. There is nothing in the contract of date, March, 1937,[2] the provisions of which, unambiguously and in the most careful, simple and detailed way, make provision, not for a sale to the bankrupt, but for consignment to and sale by it, as appellant's agent, to support the Judge's view that it was a contract,

---

[2] After reciting that appellant handles shoes and has established a reputation and knowledge for same, and that the consignee desires to handle the shoes in Montgomery, Alabama, as agent of consignor, paragraph 2 of the agreement then provides: First, that consignor agrees to consign shoes to the consignee during the existence of the contract to an amount not exceeding $5,000 in value as an initial consignment, and such further consignments from time to time as the parties agree upon; second, the consignee agrees to act as agent for appellant, and as such, to receive and sell the shoes of appellant to the best advantage; third, it provides that all shoes delivered by appellant "shall remain the property of, and the title thereto, in consignor, shall continue", until said shoes are sold in the ordinary course of trade for cash, and when sold the proceeds thereof, less the commission, shall remain the property of consignor; fourth that the agreement should cover all shoes delivered until the termination of the agreement, this to be effected by either party's giving notice. Paragraph three fixed the value of the shoes at the invoice price and the commissions of the consignee at the amounts it received over and above that price. It provided too, that the consignee would hold as agent and as the property of consignor, separate and apart from moneys received from any other source, all moneys derived from the sale of the consigned shoes, less commissions, and would remit the proceeds on Monday of each week, with an account of all shoes received under the contract, which had been sold the preceding week. By the fourth paragraph it is agreed that consignee should carry insurance against loss by fire, equivalent to the invoice price of shoes on hand with loss payable to the consignor and consignee, in proportion to their interest in the stock on hand at the time, with the right of the consignor to take out insurance if the consignee fails to do so. The fifth paragraph provided for the payment of liquidated damages of 25% of the invoice price to cover losses from shop wear or broken lots, upon any goods returned other than those returned at the termination of the contract, under provisions of paragraph two; the sixth paragraph provided that all terms and stipulations were contained in the written agreement and that the consignor should not be liable for the expenses connected with the sale of the shoes, including salaries, taxes or any other charge.

not of consignment, but of sale. Nor in the agreed facts on which the District Judge placed his reliance, is there anything of agreement or of conduct, on the part of appellant to deprive it of the title, which it was the purpose of the contract to reserve and retain in it, and which it did retain; nothing in the contract or agreed facts to justify enriching the creditors at its expense.

Nowhere in the contract or in the facts, can there be found the slightest basis for the claim, that the consignor could, at any time, or under any pretext, have sued as creditor to compel the consignee as debtor, to buy or pay for one single pair of the consigned shoes. The only obligation upon the consignee, as disclosed, by the plain and unambiguous terms of the contract and confirmed by the facts, was to turn over to the consignor, up to the invoice price, the proceeds of sales of the shoes made for it by the consignee. There is no conflict in the authorities as to the principles of law governing the determination of cases of this kind. There is considerable apparent and some real conflict, to be observed in the results of applying these principles to particular states of fact. All of the authorities are agreed, that there is no prohibition in positive law or in public policy against the handling of goods on consignment, and that the task of the court in determining whether in a particular instance, the relation of parties to goods delivered is that of seller and buyer, or that of consignor and consignee for sale is not to make a contract for the parties, but to ascertain what their contract was. They all agree too, that where the words of the contract are clear and plain, it must be given effect as written, and that it is only where the meaning is doubtful, that both the agreements and the acts of the parties must be taken into consideration in order to give to them, not a spurious, but a genuine and real effect. All agree then, that if out of the agreement itself alone, if clear and unambiguous, or out of the acts and agreements of the parties, if the agreement is of doubtful purport, there arises an obligation on the part of the apparent consignee to buy and pay for the delivered goods, such that a suit can be maintained by the consignor as creditor, the transaction is one of sale, or agreement to sell, and not of consignment for sale. Whereas, if no binding obligation to buy or pay for the goods, on which consignor could sue, arises out of the agreement alone, or out of the agreement taken with the facts, but only an obligation to account to the consignor for the proceeds of the goods when sold, the relation must be held to be, not one of buyer and seller, but one of consignor and consignee for sale. Without resorting to the cases on which appellant relies, the cases in which appellee places his reliance, [3] make this abundantly clear. In the Manly case, while the paper was called a consignment, the court held that the effect of it was to impose upon the consignee the obligations of a purchaser of the goods. Particularly noting that there was no reservation of title in the agreement except for the purpose of securing the debt, which arose against the consignee out of the terms of the contract, the court correctly held, "The contract cannot under such circumstances be a contract of consignment." In the Samson Tire & Rubber case, the court declared that the words employed in the written contract, were of doubtful meaning, and that upon the whole facts, it appeared that the attempt to give the transaction the form of a consignment was a subterfuge, the real facts being that a debt arose in favor of the consignor, as seller, and that the written instrument evidenced merely a security for the debt. The Scott County Milling Company case was a contest by the trustee in bankruptcy, of the claim of the milling company to the proceeds of insurance on goods the milling company had shipped to the bankrupt, on the ground that the transaction was a sale and not a consignment for sale, and also of the milling company's claim as general creditor, on the ground, that in obtaining a return to it of the goods which had not been destroyed by fire, the company had received a preference. The court pointing out that the oral agreement for the shipment of the grain was of doubtful import, and that the actions of the parties under it, made it plainly to appear that "the whole course of dealings indicates that each delivery was a sale on very limited and supervised credit", sustained the trustee, holding; that the transaction was a sale and not a consignment for sale; that the milling company was not the owner of,

[3] D. M. Ferry & Co. v. Hall, 188 Ala. 178, 66 So. 104, L.R.A.1917B, page 620; Samson Tire & Rubber Co. v. Eggleston, 5 Cir., 45 F.2d 502, 17 A.B.R.,N.S., 53; Scott County Milling Co. v. Grayson, 5 Cir., 88 F.2d 190, 33 A.B.R.,N.S., 42; Reliance Shoe Co. v. Manly, 4 Cir., 25 F.2d 381, 11 A.B.R.,N.S., 560.

but was creditor as to, the goods in question.

And finally, the Alabama case, on which appellee mainly relies, Ferry v. Hall, supra, affirming and reaffirming the principle we have been discussing, holds that the agreement of unambiguous and doubtful import, taken with the facts, showed the transaction to amount to a sale and delivery, and not to a consignment for sale. An exhaustive note to this case, collecting and analyzing the authorities, and fully discussing the principle, and its application to many and varying situations, arrives at the result, that if the contract imposes upon consignee an obligation to pay for the goods, it is one of sale, although the seller retains title to the goods until such payment is made, whereas, if the consignee is not obligated to pay for the goods, but only to remit the proceeds as it makes sales, the transaction is not one of sale, but of bailment and consignment for sale. Appellant cites many authorities which applying the principle to varying states of facts, many less convincing than those at bar, hold transactions not sales, but consignments for sale. We set out in the margin[4] some of those upon which he mainly relies.

The reclamation should have been granted. The order affirming its denial is reversed and the cause is remanded for further and not inconsistent proceedings.

---

[4] Re: Independent Grocery Company, 12 A.B.R.,N.S., page 656; McCallum, Trustee, v. Bray-Robinson Clothing Co., 6 Cir., 24 F.2d 35; Matter of Taylor, D.C., 46 F.2d 326; Kemp-Booth Co. v. Calvin, 9 Cir., 84 F.2d 377; In re Smith & Nixon Piano Co., 8 Cir., 149 F. 111; Bartling Tire Co. v. Coxe, 5 Cir., 288 F. 314; Matter of Weisl, D.C., 300 F. 635; Matter of Renfro-Wadenstein, D. C., 47 F.2d 238, and Id., 9 Cir., 53 F.2d 834.