JIANG SHUNZHE, et al., Plaintiffs,

v.

DAEWOOSA SAMOA, LTD. and KIL-SOO LEE, Defendants.

---

NGUYEN THI NGA, et al., Plaintiffs,

v.

DAEWOOSA SAMOA, LTD., KIL-SOO LEE,
TOURISM COMPANY 12, and IMS, et al., Defendants,

and

TOURISM COMPANY 12, Cross-Claimant/Counterdefendant,

v.

DAEWOOSA SAMOA, LTD. and KIL-SOO LEE,
Cross-Defendants/Counterclaimants,

---

NEW STAR TRADING COMPANY, LTD.,
Plaintiff/Counterdefendant,

v.

DAEWOOSA SAMOA, INC., and KIL-SOO LEE,
Defendants/Counterdefendants.

---

AMERICAN SAMOA POWER AUTHORITY,
SEUNG KYU MOON, IN SAENG LEE, JEIL VENTURES CO.,
LTD., and SAMOAN EMPLOYEES, Intervenors.

---

AMERICAN SAMOA GOVERNMENT, Necessary Party.

High Court of American Samoa
Trial Division

CA No. 68-99
CA No. 133-99
CA No. 93-00

January 4, 2002

Before RICHMOND, Associate Justice, and LOGOAI, Chief Associate Judge.

Counsel: For Vietnamese Plaintiffs, Virginia L. Sudbury and Christa Tzu-Hsiu Lin
For Chinese Plaintiffs, Afoa L. Su`esu`e Lutu and Deanna Sanitoa

For Plaintiff/Counterdefendant New Star Trading Company, Ltd., Marshall Ashley

For Intervenor American Samoa Power Authority, Roy J.D. Hall, Jr.,

For Intervenors Seung Nyu Moon and In Saeng Lee, *Pro Se*

For Intervenor Jeil Ventures Co., Ltd., Charles V. Ala`ilima

For Necessary Party American Samoa Government, Henry Kappel, Legal Counsel to the Governor

For Defendants/Cross-Defendants/Counterclaimants Daewoosa and Kil Soo Lee, Aitofele T. Sunia and Marie A. Lafaele

For Defendant/Cross-Claimant/Counterdefendant Tourism Company 12, Paul F. Miller

For Defendant IMS (no appearance)

## OPINION AND ORDER ON SECURED PROPERTY INTERESTS AND ON ADJUDICATION OF INTERVENOR CLAIMS

The Court consolidated CA No. 93-00 with CA No. 133-99 and CA No. 68-99 and permitted the several interventions and necessary party joinder in special procedural twists after the trial of CA No. 133-99 and CA No. 68-99 in order to resolve the host of issues related to the business demise of defendant Daewoosa Samoa, Ltd. ("Daewoosa") in American Samoa.

Although the claims and counterclaims in CA No. 93-00 involve both property interest and money claims between plaintiff New Star Trading Company, Ltd. ("New Star") and Daewoosa and defendant Kil Soo Lee ("Lee"), by the parties' stipulation, trial of this action on October 15 and 19, 2001, was limited to the property interest issues, and trial of other issues was deferred. Trial of the claims of intervenors Seung Nyu Moon ("Moon"), In Saeng Lee ("In Saeng"), and Jeil Ventures Co., Ltd. ("Jeil"), and necessary party American Samoa Government ("ASG") also proceeded on October 15 and 19. Moon and In Saeng presented money claims, Jeil and ASG claimed only property interests.

As of October 15, a stipulated judgment on account for unpaid utility services had been entered in favor of intervenor American Samoa Power Authority against Daewoosa, and the wage claims of intervenors Samoan employees had been separated for later trial.

### Discussion

#### A. The Parties, Business Relationships and Present Claims

■ Daewoosa is a corporation organized under the laws of American Samoa, principally to produce clothing. Lee is the president and principal owner of Daewoosa. Based on the evidence introduced at the earlier trial

of CA No. 133-99 and CA No. 68-99 and the present trial, Lee controlled and manipulated Daewoosa's operations to achieve his personal ends, essentially to the exclusion of any other shareholder's interests. For purposes of particular issues, an individual may so dominate a corporation that the individuality of the person and corporation cease to exist, and recognition of their separate existence would promote the person's unjust evasion of contractual obligations. *See Katenkamp v. Superior Court*, 108 P.2d 1, 3-4 (Cal 1940); *Minifie v. Rowley*, 202 P. 673, 676 (Cal. 1921); *Kohn v. Kohn*, 214 P.2d 71, 76-77 (Cal. Ct. App. 1950). Daewoosa was clearly Lee's alter ego with respect to the present issues under this test. New Star is a business entity organized under the laws of the Republic of Korea. New Star has engaged in business in American Samoa by providing raw materials and manufacturing equipment, specifically fabric, sewing machines, and related sewing machine equipment, to Daewoosa—and Lee. New Star has been engaged in a business relationship with Daewoosa and Lee at least since late 1999. The recent legal and financial problems of Daewoosa and Lee have led to a cessation of business and a failure to pay outstanding debts and rents. New Star claims that four containers of fabric and 92 sewing machines, along with related equipment, still in the former Daewoosa factory compound in ASG's industrial park in Tafuna, American Samoa, were delivered to Daewoosa—and Lee—under a consignment contract rather than sale, and accordingly, it has a right to have these items returned under the theory of replevin.

Jeil, another corporation organized under the laws of the Republic of Korea, was also contractually involved with Daewoosa—and Lee. It claims possession of certain property, namely, four containers of unfinished fabric at ASG's main dock and certain garments in various stages of completion at the former Daewoosa factory compound, as consigned property.

On January 1, 1997, ASG leased to Daewoosa—and Lee—real property for the Daewoosa factory compound. The lease was signed and then properly recorded with the Territorial Registrar on February 3, 1997. Daewoosa and Lee failed to keep up with rent according to the lease terms and owed ASG $177,007.41, unpaid rent in the amount of $160,915.65 plus 10% late charges (excluding the amount waived by ASG of an additional 50% late charge for payments more than 30 days' delinquent) when the lease was terminated on January 30, 2001.

Under the terms of the lease, ASG held a lien on Daewoosa's personal property constructed or installed on the premises for unpaid rent or other debts owed to ASG. The lease also required that the premises be kept free from other liens in connection with Daewoosa's operations. In order to satisfy the rental and other debts of Daewoosa and Lee, ASG claims

94

ownership of all property still on the former Daewoosa lot, other than the personal property claimed by Jeil. ASG's assertion extends to the property to which New Star also claims title.

Moon had a business relationship with Daewoosa—and Lee—from 1994 to 1999. He alleges that he was employed by Daewoosa and Lee, and was not paid. He filed a claim with the Wage and Hour Board ("the Board"), and the Board issued a finding in Moon's favor in the amount of $250,000.

In Saeng also had a business relationship with Daewoosa—and Lee. He filed a claim for repayment of a cash loan, reimbursement of the cost of foods supplied for Daewoosa's employees, and compensation for services rendered.

## B. Jeil's Property Interest Claim

Jeil's claim to personal property by means of a consignment contract with Daewoosa—and Lee—has not been challenged by ASG, New Star, or Daewoosa and Lee. Moon and In Saeng have also not specifically challenged the validity of Jeil's claims. Review of this contract confirms that the items were in fact consigned by Jeil to Daewoosa and Lee, and not sold. Jeil therefore has title to and the right to recover possession of personal property it claims.

## C. Property Interest Claims of New Star and ASG

Title to the remainder of the personal property on Daewoosa's factory compound turns on the competing claims of ASG and New Star. The ASG claim is based on both the debt of Daewoosa—and Lee—for unpaid rents and the language of the recorded lease granting ASG title to chattels remaining on the premises if Daewoosa and Lee cease to be paying tenants. New Star claims that title to the garments and machinery was never in Daewoosa's name in the first place, that Daewoosa—and Lee—were only a consignee of the property until final payment was made to New Star per the parties' contract.

The line between what is legally a sale of goods and a consignment of property can be difficult to discern. A true consignment leaves the consignor with ownership, and the powers of recall and setting sale price—the consignee receives a commission but not the profits of the sale. *See Manger v. Davis*, 619 P.2d 687, 691 (Utah 1980). In this type of relationship the consignee has no interest in the consigned property that may be obtained by creditors. *Id.* Using contract terms that give the alleged consignor the right of reclamation if goods remain unsold, without further development of the consignment relationship, does not

create a consignment. *See Edgewood Shoe Factories v. Stewart*, 107 F.2d 123, 125-26 (5th Cir. 1939) (when an obligation arises for the alleged consignee to buy and pay for delivered goods, such that a suit could be maintained by the alleged consignor as creditor, the transaction is a sale or agreement to sell and not a consignment for sale). Though not adopted in American Samoa, where the Uniform Commercial Code is applicable, it is even more difficult to show a consignment. *Bukfor, Inc. v. Star Jewelry Co., Inc.*, 552 S.W.2d 522, 523-24 (Tex. 1977) (there is a policy preference in permitting parties to deal with debtors on assumption that all property in debtor's possession is unencumbered unless the contrary is on public record).

■ The relationship between New Star and Daewoosa and Lee concerning the garments, sewing machines, and related sewing machine equipment is contested. New Star relies mainly on its written agreement with Daewoosa—and Lee, titled "General Contract for Production," dated September 26, 1999. The language of this agreement does appear to preserve title to the property in New Star. However, closer examination of how the agreement is actually worded provides a different picture. Daewoosa and Lee did not have the option to return unsold materials to New Star by the terms of the contract. Even more telling are the terms of the transfer of the sewing machines and related sewing machine equipment. Daewoosa and Lee were bound to pay for the machines and equipment, with interest, in accordance with a payment schedule. Simply, holding a right of reclamation if payments are not met does not create a consignment. *See Edgewood*, 107 F.2d at 125-26. Rather, these terms are more in line with a sale with a security interest. In addition, two weeks later, on October 10, 1999, New Star and Lee, on Daewoosa's behalf, signed a document on New Star's letterhead confirming that New Star "sold" the sewing machines and related sewing machine equipment to Daewoosa and Lee, and then outlining the payment terms.

■ New Star's property interest claim also fails before those of ASG for another reason. New Star did not record its interest in the property. A conditional sale which is not a consignment leaves the seller with a security interest. *See Shantilal Brothers, Ltd. v. KMST Wholesale*, 15 A.S.R.2d 115, 118 (Trial Div. 1990). A security interest or mortgage is not valid against another creditor unless that creditor is put on actual notice of the transaction or the interest is properly recorded with the Territorial Registrar. *See* A.S.C.A. § 27.1510. The documents upon which New Star depends to establish its interest are unrecorded security interests.

We also note that New Star failed to obtain a foreign corporation permit to transact business in the Territory, in violation of A.S.C.A. § 30.0305,

and annual business licenses, in violation of A.S.C.A. § 27.0219(a). This failure compounded the notice problem. Without this permit and license, New Star has even more difficulty of establishing that ASG was or should have been aware of New Star's security interest.

As ASG did not have either constructive notice by recordation or actual notice of New Star's interest, New Star's property interest is inferior to ASG's claim. Therefore, except for the property properly belonging to Jeil, ASG has title to the personal property remaining on the former Daewoosa factory compound in satisfaction of its lien for unpaid rent and other debts owed by Daewoosa and Lee.

D. Moon's Money Claim

Moon's claim is for unpaid salary, founded on a written contract signed partially after-the-fact in June 1996. Heung-Soo Ju, by his authority as the president of Daewoosa in 1996, and Moon signed the contract. The contract provides Moon as Daewoosa's public relations officer with a salary of $2,000 per month from June 1994 through May 1996, and with additional duties as vice-president/treasurer, $25,000 per year from June 1996. Moon was terminated by Lee or resigned his position, or both, on March 27, 1999. Thus, Moon earned, under the terms of his contract, and was not paid, $48,000 from June 1994 through May 1996, and $70,625 from June 1996 to March 27, 1999, a total of $118,625.

Moon supported his claim with the decision of ASG's Wage and Hour Board, issued on March 10, 2000, awarding Moon $250,000 in unpaid wages. Even though the award far exceeds the terms of Moon's employment contract, the Board apparently accepted at face value the $250,000 claim submitted by Moon. Perhaps the Board took into account Daewoosa business expenses advanced and the value of unreturned personal property provided by Moon, which he put into evidence. Even if so, however, these amounts are not salary, and Moon has not provided a contractual basis for any reimbursement of expenses or return of property.

In any event, this Court is not being asked to judicially review a final administrative decision for errors of law, a matter ordinarily within the exclusive jurisdiction of the Appellate Division of this Court, *see* A.S.C.A. §§ 4.1040, 4.1041, & 4.1044, but rather to award money damages for breach of contract and, perhaps, as enforcement of the Wage and Hour Board decision. As such, the Trial Division has jurisdiction and is not bound by the erroneous salary calculation determined by the Board. *See* A.S.C.A. § 4.1040(b); *see also* MODEL STATE ADMIN. PROCEDURE ACT § 5-101 (1981).

Moon is accordingly entitled to recover $118,625 from Daewoosa and Lee.

E. In Saeng's Money Claim

In Saeng's claim is for $12,658.58 in reimbursement of the cost of food and materials he supplied to Daewoosa and Lee for Daewoosa's operations, $15,000 for the unpaid balance of a loan that he made to Daewoosa and Lee, and $16,900 as compensation for services rendered to Daewoosa and Lee, a total of $44,558.58, Lee confirmed the nature and amount of these debts in December 2000, and did not contest them during trial of In Saeng's claim. The claim is supported by evidence and is unrefuted.

In Saeng is accordingly entitled to recover $44,558.58 from Daewoosa and Lee.

## Order

1. New Star's claim to any right to take possession of the fabric, 92 sewing machines, and related sewing machine equipment is denied.

2. Jeil is awarded title and possession of the personal property as it claims.

3. Based on the lien provided in the ASG lease to Daewoosa and Lee, ASG is awarded title and possession to all other items of personal property remaining on the premises of Daewoosa's former factory compound in Tafuna, including but not limited to the fabric, 92 sewing machines, and related sewing machine equipment claimed by New Star, to satisfy its claim of $177,007.41 against Daewoosa and Lee.

4. Moon is awarded judgment against Daewoosa and Lee, jointly and severally, in the amount of $118,625, plus post-judgment interest at the rate of 6% per annum.

5. In Saeng is awarded judgment against Daewoosa and Lee, jointly and severally, in the amount of $44,448.58, plus post-judgment interest at the rate of 6% per annum.

It is so ordered.