**JANTZEN, INC., Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

No. 12571.

District of Columbia Court of Appeals.

Argued March 9, 1978.

Decided Nov. 7, 1978.

Michael Lenehan, Washington, D. C., with whom George D. Webster, Washington, D. C., was on the briefs, for appellant.

Richard G. Amato, Asst. Corp. Counsel, Washington, D. C., with whom John R. Risher, Jr., Corp. Counsel, Washington, D. C., at the time the brief was filed, and Louis P. Robbins, Principal Deputy Corp. Counsel, Robert E. McCally, Deputy Corp. Counsel and Henry E. Wixon, Asst. Corp. Counsel, Washington, D. C., were on the brief, for appellee.

Before KELLY, YEAGLEY and MACK, Associate Judges.

PER CURIAM:

This is an appeal from a judgment against appellant Jantzen, Inc. in the Tax Division of Superior Court denying Jantzen's claim for refund of a corporate franchise tax in the amount of $407.72 for the period of September 1, 1968 to August 31, 1969. The issue presented for our consideration involves the scope and extent of applicability of 15 U.S.C. §§ 381–84 (1970), Pub.L. No. 86–272, providing in pertinent part that no state or political subdivision thereof may tax income derived from interstate commerce if the entity's only business activity therein consists of, *inter alia,* the solicitation of orders by a sales representative. For the reasons which follow, we affirm the trial court's denial of Jantzen's claim for a refund.

Jantzen is a Nevada corporation with its main office in Portland, Oregon. During the period in question it did not maintain any inventory or warehousing in the District of Columbia. Its sales here were made through sales representatives who solicited orders which were sent to Portland for acceptance or rejection. All deliveries of Jantzen merchandise to persons within the

District were made by common carrier from points outside the District. Jantzen retained two sales representatives for the District of Columbia; these representatives maintained offices within the District at locations of their own choosing.

On December 10, 1975, Jantzen filed under protest a registration application with the District of Columbia for the purpose of paying corporate franchise tax pursuant to D.C.Code 1973, § 47–1571a.* The registration application was filed in response to notification from the District that tax would be assessed against Jantzen if it did not register within thirty days. Jantzen had previously informed the District that Pub.L. No. 86–272 prohibited the District from imposing a net income tax on Jantzen. The District maintained, however, that Pub.L. No. 86–272 was by its terms applicable only to the states and their political subdivisions, and therefore did not apply to the District of Columbia.

After registering with the District, Jantzen filed a corporate franchise tax return for the period September 1, 1968 to August 31, 1969, together with a payment of tax, penalty and interest in the amount $407.72. Jantzen subsequently filed with the District a claim for a refund of that amount, which was denied.

On September 27, 1976, Jantzen filed a petition in the Tax Division of the Superior Court appealing the denial of its claim for refund and asserting that it was exempt from tax by reason of Pub.L. No. 86–272. In argument before the trial court counsel for both parties submitted that the sole question for determination was whether Pub.L. No. 86–272 was applicable to the District of Columbia; this was the only issue addressed. However, the basis of the trial court's opinion denying Jantzen's claim for a refund was that Jantzen's activities within the District of Columbia went beyond the scope of Pub.L. No. 86–272, and it

was therefore unnecessary to decide whether the statute was applicable to the District. We agree.

Pub.L. No. 86–272 was enacted in 1959 to clarify questions arising as a result of the Supreme Court case, *Northwestern States Portland Cement Co. v. Minnesota*, 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed.2d 421 (1959), in which it was held that

[N]et income from the interstate operations of a foreign corporation may be subjected to state taxation provided the levy is not discriminatory and is properly apportioned to local activities within the taxing State forming a sufficient nexus to support the same. [*Id.* at 452, 79 S.Ct. at 359.]

Since the decision left unclear what amount of local activity would support the imposition of a tax, Congress, in anticipation of concern and uncertainty among businesses engaged in interstate commerce, acted to establish a level of "minimum activities" below which a net income tax could not be imposed. S.Rep. No. 658, 86th Cong. 1st Sess. 2, *reprinted in* [1959] U.S.Code Cong. & Admin.News p. 2548.

Pub.L. No. 86–272 as enacted provides in relevant part as follows:

Sec. 101. (a) No State, or political subdivision thereof, shall have power to impose, for any taxable year ending after the date of the enactment of this Act, a net income tax on the income derived within such State by any person from interstate commerce if the only business activities within such State by or on behalf of such person during such taxable year are either, or both, of the following:

(1) the solicitation of orders by such person, or his representative, in such State for sales of tangible personal property, which orders are sent outside the State for approval or rejection, and if approved, are filled by shipment or

---

* That section provides as follows:

For the privilege of carrying on or engaging in any trade or business within the District and of receiving income from sources within the District, there is hereby levied for each taxable year a tax at the rate of 8 per centum upon the taxable income of every corporation, whether domestic or foreign (except those expressly exempt under section 47–1554). The minimum tax payable shall be $25.00.

delivery from a point outside the State; and

(2) the solicitation of orders by such person, or his representative, in such State in the name of or for the benefit of a prospective customer of such person, if orders by such customer to such person to enable such customer to fill orders resulting from such solicitation are orders described in paragraph (1).

\*     \*     \*     \*     \*     \*

(c) For purposes of subsection (a), a person shall not be considered to have engaged in business activities within a State during any taxable year merely by reason of sales in such State, or the solicitation of orders for sales in such State, of tangible personal property on behalf of such person by one or more independent contractors, or by reason of the maintenance of an office in such State by one or more independent contractors whose activities on behalf of such person in such State consist solely of making sales, or soliciting orders for sales, of tangible personal property.

(d) For purposes of this section—

(1) the term "independent contractor" means a commission agent, broker, or other independent contractor who is engaged in selling, or soliciting orders for the sale of, tangible personal property for more than one principal and who holds himself out as such in the regular course of his business activities; and

(2) the term "representative" does not include an independent contractor.

One of the grounds for the trial court's determination that Jantzen's activities went beyond the statute's minimum activities approach is readily apparent: Section 101(a), the provision applicable herein, exempts from state taxation *only* the solicitation of orders by salespersons, not their maintenance of an office within the taxing jurisdiction. Further, there is no evidence in the record suggesting that § 101(c) of the statute, permitting the maintenance of an office by an independent contractor, is applicable in the instant case. Neither party

has suggested that Jantzen's sales personnel are independent contractors; in fact, Jantzen specifically refers to them, mirroring the language of the statute, as "sales representatives." The very fact that the statute allows the maintenance of an office by an independent contractor, but makes no such express allowance with respect to a sales representative, supports the inference that the latter is not permitted such an exemption.

Although this precise question does not appear to have been squarely addressed in the cases interpreting Pub.L. No. 86–272, there are other factors which buttress the trial court's determination. As enacted, § 101(a) provided that no state or political subdivision would have the power to impose a net income tax on income derived within such state from interstate commerce, if the only business activities within the state were those set forth in paragraphs (1) and (2). As originally written, however, the Senate bill also contained a paragraph (3) specifying a further business activity which would be exempt from state taxation. That paragraph provided for the exemption of:

(3) The maintenance and operation by such person, or by his representative, in such State of an office the primary purpose and use of which is to serve representatives of such person who are engaged in the solicitation of orders. [*See* S.Rep. No. 658, 86th Cong., 1st Sess. 2, *reprinted in* [1959] U.S.Code Cong. & Admin.News pp. 2548, 2552.]

An amendment subsequently introduced and passed struck this entire paragraph. The debate on this particular amendment indicates that while the activity of a salesperson in, for example, writing orders in his or his customer's home should be immunized, his activity in maintaining a permanent office arrangement should not. *See* 105 Cong.Rec. 16353–477 (1959). Where a provision of a statute is deleted prior to passage and never becomes a part of the law, to attempt a construction accommodating that provision "would be reading into the [a]ct by implication what the Legisla-

ture seemingly rejected." *Territory of Alaska v. American Can Co.*, 358 U.S. 224, 227, 79 S.Ct. 274, 277, 3 L.Ed.2d 257 (1959).

In *Heublein, Inc. v. South Carolina Tax Commission*, 409 U.S. 275, 278, 93 S.Ct. 483, 486, 34 L.Ed.2d 472 (1972), the Supreme Court concluded that it "need not decide whether . . . the actions of . . . maintaining a local office" fell within the scope of Pub.L. No. 86–272, as the activities of the sales persons went beyond the act. Of the relatively few cases construing the statute, however, several from other jurisdictions, while not expressly on point, do provide a degree of guidance. In finding that the business activities in question came within the minimum standards proscription of Pub.L. No. 86–272, the Missouri Supreme Court in *State ex rel. CIBA Pharmaceutical Products, Inc. v. State Tax Commission*, 382 S.W.2d 645 (Mo.1964) found significant the fact that the sales representatives operated out of their own homes; neither they nor the corporation for which they worked maintained a sales office in Missouri. In *Clairol, Inc. v. Kingsley*, 57 N.J. 199, 199 n. 1, 270 A.2d 702, 702 n. 1 (1970), in finding the corporation exempted from tax by the terms of 86–272, the New Jersey Supreme Court noted that "Clairol has no formal office in the state," and in reaching a similar conclusion regarding another corporation the Oregon Supreme Court pointed out that it maintained "no office [and] no office equipment . . . [within the state.]" *Smith Kline & French Laboratories v. State Tax Commission*, 241 Or. 50, 52, 403 P.2d 375, 376 (1965).

These decisions as well as the Congressional amendment striking the paragraph exempting the maintenance of an office from the coverage of the statute, appear to reflect a determination that the act of a sales representative in establishing a permanent office arrangement within the taxing jurisdiction goes beyond the scope of mere "solicitation of orders." Because we conclude that the activities of Jantzen's sales representatives exceed the minimum standards of Pub.L. No. 86–272, we need not reach the question whether the District

of Columbia is a "state" for purposes thereof.

*Affirmed.*