[No. B002800. Second Dist., Div. Seven. Nov. 19, 1984.]

CONSOLIDATED ACCESSORIES CORPORATION,
Plaintiff and Appellant, v.
FRANCHISE TAX BOARD, Defendant and Respondent.

COUNSEL

Allred, Maroko, Goldberg & Ribakoff, Gloria Allred and Linda R. Wieder for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Edmond B. Mamer and Herbert A. Levin, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

LILLIE, P. J.—Appellant Consolidated Accessories Corporation (Consolidated) is a Texas corporation which during the years 1974-1982 sent ladies' accessories (purses, belts, gloves, and umbrellas) from Texas directly to retail stores in California pursuant to consignment agreements with the stores. During these years, Consolidated had one permanent employee and two temporary employees in California, all of whom worked from their California residences. These employees took orders and visited the purchasing stores, where they made certain the stores had proper inventories and displays of Consolidated accessories. They did not make contracts or receive payments on behalf of Consolidated; the stores sent all payments directly to Consolidated in Texas. The employees merely advised Consolidated concerning the prices, amounts and types of accessories to be sent to the stores.

Consolidated paid California corporate income tax to the Franchise Tax Board for the years 1974-1982, then sought refund of the monies paid claiming exemption from state corporate income taxation pursuant to Public Law Number 86-272 (15 U.S.C. § 381). The Franchise Tax Board refused to refund the taxes paid. Consolidated filed two actions in superior court for refund of taxes pursuant to Revenue and Taxation Code section 26102; the actions were consolidated. After consideration of the stipulated facts and the trial briefs of the parties, the court, sitting without a jury, entered judgment against Consolidated and in favor of the Franchise Tax Board. This timely appeal follows.

I

## FEDERAL LIMITATION ON STATE'S RIGHT TO TAX

■■■ Public Law Number 86-272 (15 U.S.C. § 381) provides in pertinent part: "(a) No State, or political subdivision thereof, shall have power to impose . . . a net income tax on the income derived within such State by any person from interstate commerce if the only business activities within such State by or on behalf of such person during such taxable year are . . .: [¶] (1) the solicitation of orders by such person, or his representative, in such State for sales of tangible personal property, which orders are sent outside the State for approval or rejection, and, if approved, are filled by shipment or delivery from a point outside the State." Consolidated sought a refund of income taxes paid in California on the basis of this statute. The trial court concluded that Consolidated's activities in California exceeded the mere "solicitation of orders for sales" described by the statute, and thus Consolidated was not entitled to immunity from state taxation.

Appellant contends the trial court erred in this conclusion and in various determinations set forth in the statement of decision. ■■■ Since the issues here involve the application of a taxing statute to stipulated facts, we are confronted solely with a question of law and are not bound by the findings of the trial court. (*Montgomery Ward & Co.* v. *State Bd. of Equalization* (1969) 272 Cal.App.2d 728, 734 [78 Cal.Rptr. 373], cert. den. 396 U.S. 1040 [24 L.Ed.2d 684, 90 S.Ct. 688]; see also *Southern Pacific Equip. Co.* v. *State Bd. of Equalization* (1971) 16 Cal.App.3d 302, 304, fn. 1 [94 Cal.Rptr. 107].) ■■■ In a suit for tax refund, the taxpayer has the burden of proof; he must affirmatively establish the right to a refund of the taxes by a preponderance of the evidence. (*Paine* v. *State Bd. of Equalization* (1982) 137 Cal.App.3d 438, 442 [187 Cal.Rptr. 47]; *Honeywell, Inc.* v. *State Bd. of Equalization* (1982) 128 Cal.App.3d 739, 744 [180 Cal.Rptr. 479].) ■■■ To meet this burden, Consolidated must affirmatively estab-

lish that its activities in California were limited to solicitation of orders for sales of its goods. In our consideration of this matter, "[i]t is important to note that in enacting Public Law 86-272, Congress carved out a specific area of immunity from state taxation and the courts have limited the exempted area strictly to solicitation or activities incidental thereto." (*Appeal of Nardis of Dallas, Inc.* (Cal. State Bd. of Equalization 1975) CCH Cal.Tax Rptr. ¶12-420.78.) Our research shows a paucity of California authority interpreting Public Law Number 86-272, requiring us to look to other jurisdictions for guidance.

## II

### USE OF CONSIGNMENT AGREEMENTS

The first and fatal obstacle faced by appellant is its use of consignment agreements with the California retail stores handling its merchandise. Public Law Number 86-272 immunity extends to solicitation of orders for sales, not to solicitation of orders for the placement of goods on consignment.

■ "A true consignment constitutes an agency or bailment relationship between the consignor and consignee. The consignor, as principal retains the ownership, may recall the goods, and sets the sale price. The consignee (agent) receives a commission and not the profits of the sale." (*Manger* v. *Davis* (Utah 1980) 619 P.2d 687, 691.) "If . . . the parties to the transaction intend passage of title, the transaction may be regarded as a contract of sale rather than a bailment. In determining which event occurred, bailment or contract of sale, the intent of the parties is controlling." (*Northern Counties Bank* v. *Earl Himovitz & Sons Livestock Co.* (1963) 216 Cal.App.2d 849, 859 [31 Cal.Rptr. 551].) The stipulated facts establish that pursuant to the consignment agreement, Consolidated intended to and did retain legal title and beneficial ownership of the merchandise unless and until such time as the goods were sold by the consignee to a third party. Under the consignment agreement, the retail price is established by Consolidated, and the consignee receives a 20 percent commission on the sale, rather than any profit from the sale. The goods may be ordered back by Consolidated prior to their sale to a third party. The record strongly suggests a consignment arrangement rather than a contract for sale.

■ The entire contract as well as the action of the parties thereunder must be considered to determine whether a contract was for a sale or consignment; significant factors include: suggestion and contemplation of consignment in the memorandum of the agreement between the parties; lack of obligation on the part of the "consignee" to pay for unsold goods; obliga-

tion of the consignee to pay for goods when sold by him; prompt remittance to consignor for goods sold, whether for cash or credit; visits to consignee to inquire into sales and urge prompt remittance of collections to consignor; keeping by a representative of the consignor of an account or inventory of goods consigned and sold; provision for return of merchandise upon termination of the agreement. (*Hervey* v. *AMF Beaird, Inc.* (1971) 250 Ark. 147 [464 S.W.2d 557, 562].)

The terminology in appellant's memorandum of agreement is consistent with consignment throughout. It is expressly labeled "Consignment Agreement," the parties to it are called "Consignor" and "Consignee," and it states: "the consignee desires to receive upon consignment from the consignor" merchandise for sale in a retail store. The words "sale" or "sold" are never used in connection with the transactions between Consolidated and the consignee; they are only used in reference to disposition of goods to others by the consignee. (See *Hervey* v. *AMF Beaird, Inc., supra,* 464 S.W.2d 557, 563, fn. 3.) Consignee must remit to consignor on a weekly basis 80 percent of the proceeds of all sales of consigned merchandise, together with a weekly sales report; prior to remittance, consignee agrees to hold these proceeds in trust for consignor. Consignee has no obligation under the agreement to pay for unsold goods, except in the event of inventory shortages. Upon termination of the agreement, consignee is to return all unsold merchandise to consignor. Consignee is obligated to take physical inventory every three months and to send a copy to consignor; Consolidated's three California employees also made personal visits to consignees and made certain they had proper inventories and displays of Consolidated's merchandise.

We conclude Consolidated entered into true consignment agreements with retail stores in California.

### III

#### USE OF AGREEMENTS FOR SECURITY

Consolidated concedes that a true consignment arrangement exceeds the minimum standards of Public Law Number 86-272, as the consignee sells goods for the direct benefit of the true owner, the consignor, who thereby avails himself of the benefits and protections of the taxing state. However, Consolidated contends the stipulated facts establish that it intended to and actually used the consignment agreements with its California customers *only* for security, and that the agreements were thus not "true consignments" exceeding the limitations for immunity under Public Law Number 86-272.

We disagree. The stipulated facts do show Consolidated used the agreement to assure that it would be paid for the merchandise delivered to the contracting California retail stores, and that Consolidated intended to and did perfect its status as a secured creditor by the filing prescribed under article 9 of the Uniform Commercial Code. But the facts do not show that this was the only purpose of the consignment agreement. Consignment agreements commonly provide other benefits to a consignor, including the ability to set the price for the retail goods and the distribution of goods to otherwise reluctant retail stores by relieving the retailer of the obligation to pay for goods unless sold and by offering the retailer the right to return any goods not sold. Consolidated has failed to establish that the agreement was not intended to also serve these purposes. The record shows Consolidated's intention to enter into true consignment agreements with the California retail stores, as well as its intention to protect its interest in the merchandise from claims of the consignees' creditors and from default on payment by the consignees.

IV

### Ownership of Goods in California

The consignment agreement and the stipulated facts provide that Consolidated was to retain title to the merchandise until such time as it was sold to a third party by the consignee. Thus the Consolidated merchandise shipped to its consignees in California was owned by Consolidated, even after it was delivered to the consignees. The presence of personal property of a foreign corporation in another state defeats immunity from taxation in that state under Public Law Number 86-272. (*Olympia Brewing Co.* v. *Department of Revenue* (1973) 266 Ore. 309, [511 P.2d 837, 838], cert. den. 415 U.S. 976 [39 L.Ed.2d 872, 94 S.Ct. 1561].) The stipulated facts state that Consolidated's California employees made certain during their visits to the California retail stores "that these stores had proper *inventories* and displays of the above accessories." (Italics added.) This inventory, owned by Consolidated, was maintained in California by its consignees for the purpose of filling the "orders" of third party retail buyers. Where buyers' orders are filled from a stock of goods maintained in the state by a consignee for that purpose, the consignor's activities exceed the statutory minimum and cannot qualify for the protection of Public Law Number 86-272. (*Appeal of Knoll Pharmaceutical Co., Inc.* (Cal. State Bd. of Equal. 1977) CCH Cal.Tax Rptr. ¶205-714.)

Consolidated has failed to affirmatively establish that it was immune from taxation under Public Law Number 86-272. Inasmuch as the use of con-

signment agreements and the ownership of goods in California both defeat Consolidated's immunity from taxation under that section, it is unnecessary for us to consider whether appellant's other activities in California also exceed the solicitation of orders for sales.

### DISPOSITION

The judgment is affirmed.

Thompson, J., and Johnson, J., concurred.