509 A.2d 702

MATTHEW BENDER & COMPANY, INCORPORATED

v.

COMPTROLLER OF the TREASURY.

No. 981, Sept. Term, 1985.

Court of Special Appeals of Maryland.

June 4, 1986.

694

Harry D. Shapiro (Neil C. Kahn and Venable, Baetjer & Howard, on brief), Baltimore, for appellant.

John K. Barry, Asst. Atty. Gen., Annapolis (Stephen H. Sachs, Atty. Gen., Baltimore, and Gerald Langbaum, Asst. Atty. Gen., Annapolis, on brief), for appellee.

Argued before ALPERT, BLOOM and ROBERT M. BELL, JJ.

ALPERT, Judge.

The Maryland Tax Court ordered a refund of income taxes and interest for the calendar years 1975 through 1980, inclusive, to be paid by the Comptroller of the Treasury (appellee) to Matthew Bender and Company, Incorporated (appellant). The Circuit Court for Baltimore City reversed that decision. This appeal followed.

## PROCEDURAL BACKGROUND

On or about September 3, 1981, an auditor in the Comptroller's Corporation Section mailed a notice to Bender, advising that it was liable for Maryland income taxes for the years 1975 through 1980. That notice was based on the auditor's evaluation that, pursuant to Article 81, § 316 of the Maryland Annotated Code, Bender was carrying on a trade or business partly within and partly without the State of Maryland during the years in question. In response to the notice, Bender filed returns for the years in question and paid the tax and interest assessed in the amount of $74,081. Subsequently, Bender filed an amended return requesting a full refund of those taxes and interest.

In a letter dated October 29, 1982, counsel for Bender was informed by a hearing officer of the Comptroller that the refund was denied for each year in question. On or about November 12, 1982, Bender filed a Petition of Appeal with the Maryland Tax Court, stating as grounds that the disallowance of the claims for refund was erroneous and illegal because Bender was not doing business in Maryland during the years in question.

A proceeding was held before the Maryland Tax Court on July 26, 1984, in which the issue at bar was whether, during the years in controversy, Bender was engaged in a trade or business in the state within the meaning of Section 316(c) of the Code. The tax court made the following findings:

(1) Bender is a publisher of legal texts whose principal offices are outside the State of Maryland;

(2) Bender solicits orders for its publications from customers in Maryland through commission salesmen and through the mails. Orders for the publications are sent to Bender's principal office where, upon approval, they are filled by mailing the requested materials back into Maryland;

(3) Port City Press ("PCP") is a Maryland printer which provides its services to Bender on an ongoing basis;

(4) Bender occasionally sends representatives to Maryland to consult with the staff of PCP on various aspects of their business relationship; and

(5) In order to facilitate production and reduce costs, Bender provides PCP with paper which the latter then stores for use in filling Bender's orders.

On October 22, 1984, the tax court ordered the Comptroller's denial of Bender's claim for refund reversed, and allegedly issued and mailed to the parties an order and memorandum of grounds for decision which stated, in brief, that the activities engaged in by Bender were not sufficient to trigger Maryland income tax under the applicable statute.

On November 27, 1984, the Clerk of the tax court informed the Comptroller that a copy of the tax court's decision had been mailed to the Comptroller. On November 29, 1984, subsequent to the expiration of the thirty day period[1] following the issuance of the tax court's order, a Motion to Extend and Fix Time for Filing Appeal and affidavits in support thereof were filed by the Comptroller. In that motion, the Comptroller requested that an order be entered extending the time for the Comptroller to appeal the decision of the tax court. As grounds for this motion, the Comptroller requested, in the alternative, the tax court to find that, (a) the tax court decision was never sent to the

---

1. Pursuant to Maryland Rule B4a, the Comptroller had 30 days from "the date of the action appealed from, ... [or] the date ... notice [was] sent, or ... the date of receipt of such notice" to appeal the tax court's order.

Comptroller as required by Art. 81 § 229(i), or (b) as the tax court decision was never received by the Comptroller, an extension of the appeals period should be granted.

The tax court found that the October 22, 1984 order and opinion of the tax court was never received by the Comptroller and, pursuant to Maryland Rule of Procedure B4b, ordered that an appeal be permitted to be filed on or before December 17, 1984.

The Comptroller's appeal was filed on approximately December 12, 1984, in the Circuit Court for Baltimore City. Pursuant to Rule B5, Bender filed a Motion to Dismiss the Appeal asserting that the appeal was filed more than thirty days after the tax court's decision was issued. That motion was denied on the grounds that good cause had been shown for the late filing of the appeal. The case proceeded and on July 29, 1985, the circuit court issued a Memorandum Opinion and Order reversing the judgment of the tax court. The circuit court's decision was based on a finding, contrary to that of the tax court, that Bender was doing business within the state for the years in question.

Bender is before this court contending:

1. That the circuit court erred in denying its motion to dismiss; and

2. That the circuit court improperly substituted its judgment for that of the tax court in reversing that court's judgment that appellant was *not* "doing business" in the state.

I.

Bender first argues that it was error for the circuit court to deny its motion to dismiss pursuant to Rule B5 when the motion was based on the failure of the Comptroller to file an order for appeal within the statutorily prescribed time. Rule B5 provides:

*Dismissal of Appeal.*

If the appellant shall fail to file his order for appeal within the time prescribed by Rule B4 (Time for Filing) or

any order issued pursuant thereto, or shall fail to file his petition within the time prescribed by section e of Rule B2 (How Appeal Taken), the court shall dismiss the appeal *unless cause to the contrary be shown.*

(Emphasis added).

Maryland Rule B4a governs the time limits within which an appeal from an administrative agency's order may be taken. It states:

*Within Thirty Days.*

An order for appeal shall be filed within thirty days from the date of the action appealed from, except that where the agency is by law required to send notice of its action to any person, such order for appeal shall be filed within thirty days from the date such notice is sent, or where by law notice of the action of such agency is required to be received by any person, such order for appeal shall be filed within thirty days from the date of the receipt of such notice.

The administrative agency (here, the tax court) is empowered to extend the 30-day deadline set out in B4a. Rule B4b so provides:

*Change of Time.*

Upon application of a person authorized to appeal or a party to the proceeding before the agency, and for sufficient cause shown, a court in which the order for appeal may be filed may reduce such time, and such court or agency may extend it for not more than sixty days.

The tax court here granted an extension to the Comptroller under this section, ordering that the order for appeal be filed no later than December 17, 1984. The crux of Bender's objection, however, is that the court ignored Rule B4c, which requires that an application to extend the time for filing an order of appeal be filed within the time limits established in B4a:

*Time for Filing Application to Extend Time.*

An application to extend the time for filing an order for appeal shall be filed within the time required by this Rule for the filing of an order for appeal.

Bender contends that the time limit within which the Comptroller was required to file an application to extend time was "30 days from the date notice was sent." In that notice was sent on October 22, 1984, Bender states, the 30 day period expired on November 21, 1984; thus, the Comptroller's application, filed on November 29, 1984, was too late and the court was without jurisdiction to grant the extension under B4c.

Bender's argument that the 30 day period began to run from the day notice was sent is based on the words of Md. Code Ann. Art. 81 § 229(i) (1985 Cum.Supp.):

The Court shall hear and determine all appeals promptly. If an appeal involves real property taxes the Court shall, upon the request of any party to the appeal, provide a copy of the examiner's recommendation. In proper cases the Court shall file a written order. *Copies of the order shall be certified by the clerk, under the seal of the Court, to the agency appealed from and to all parties to the appeal.* Unless an appeal is taken to a circuit court for a county in accordance with this section, an order under this section is final.

(Emphasis added).

Bender explains that under this statute, the tax court was only required to *send* notice of the order to the parties. The emphasized language above, "shall be certified ... to the agency appealed from and to all parties to the appeal" does not, in Bender's view, require that such notice ever be *received* by the party.

The Comptroller advances a different interpretation of the statute, namely, that such language requires that a copy of the order be received by the parties, in which case the 30–day period set out in B4a would not begin to run until such time as the parties received a copy of the order. In that there was no receipt in this case, the Comptroller

continues, the 30 day period never began to run, so that the tax court retained jurisdiction to grant a motion to extend time for filing an appeal under B4c.

The tax court implicitly adopted this position in its order granting the motion to extend and fix time for filing an appeal. The court there found "that the order and opinion dated October 22, 1984, was never received by respondent or counsel," and on that basis, granted the extension. This failure to receive the notice was subsequently deemed "cause to the contrary" by the circuit court warranting the denial of Bender's motion to dismiss under rule B5.

We will not disturb the judgment of the circuit court denying the motion to dismiss because the circuit court, in its discretion, could consider the failure to receive notice as "cause to the contrary" and entertain the appeal.

*The finding of "good cause" by the circuit court*

■ Even if we were to hold the tax court's interpretation of § 229(i) was erroneous, an issue that we need not reach, we would nevertheless affirm the circuit court's denial of Bender's motion to dismiss.

Under Rule B5, the circuit court may not dismiss an appeal for failure to file an order for appeal within the time prescribed by the rule where "cause to the contrary" is shown. Cause to the contrary is equated with "good cause." *Francois v. Alberti Van and Storage Co.*, 285 Md. 663, 672, 404 A.2d 1058 (1979). A finding of good cause is a matter to be determined on a case by case basis. *Id.*

There is a dearth of Maryland law addressing whether failure to receive notice under Rule B4 constitutes "good cause." We, therefore, must look to other sources for an analogy.

Cases interpreting the Federal Rules of Civil Procedure are instructive. F.R.C.P. 55, which sets forth the rules governing the entry of a default judgment in federal court, provides:

(c) *Setting aside default*

For *good cause* shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b). (Emphasis added).

Courts applying that section have held that a party's or counsel's failure to receive notice of particular action taken in a case constituted good cause for setting aside the default under the rule. *See Sonus Corp. v. Matsushita Electric Industrial Co.*, 61 F.R.D. 644 (D.Mass.1974) (failure of party to receive notice that a default would be entered against him held "good cause" to set aside default). *See also Rasmussen v. W.E. Hutton & Co.*, 68 F.R.D. 231 (N.D.Ga.1975) (wherein it was held that failure of a party to receive notice of the action itself constituted good cause to set aside the entry of a default judgment); *Schartner v. Copeland*, 59 F.R.D. 653 (M.D.Pa.), *aff'd without opinion*, 487 F.2d 1395 (3rd Cir.1973); *United States v. $3976.62 In Currency*, 37 F.R.D. 564 (S.D.N.Y.1965); *Huntington Cab Co. v. American Fidelity & Casualty Co.*, 4 F.R.D. 496 (S.D.W.Va.1945).

It has also been held that a party's failure to receive information regarding the status of the case amounted to good cause necessary to set aside the entry of a default judgment under F.R.C.P. 55(c), *even where* counsel would have learned of such action had they checked the docket sheet. *Gillespie v. Hysmith,* 44 F.R.D. 476, 477 (W.D.Pa. 1968). *But see Maryland Metals, Inc. v. Harbaugh*, 33 Md.App. 570, 365 A.2d 600 (1976), where counsel's failure to keep informed of docket entries was held not to constitute a "mistake or irregularity" within old Rule 625(a) (now Rule 2–535).

■ A trial court's exercise of discretion in granting or denying a motion to dismiss an appeal is to be upheld except in extreme cases of clear abuse. *See Langrall, Muir & Noppinger v. Gladding*, 282 Md. 397, 384 A.2d 737 (1978). It was undisputed below that the Comptroller did not receive notice of the October 22 order until November 27,

more than 30 days subsequent to the date the order was issued. The circuit court did not abuse its discretion in finding that the Comptroller's failure to receive a copy of the notice provided the "cause to the contrary" needed to deny the motion to dismiss the appeal.

## II.

Bender contends that the circuit court improperly substituted its judgment for that of the Maryland Tax Court in holding that Bender was "doing business" within the state. Basic to this argument is Bender's position that such a determination involves a factual conclusion to which the Circuit Court, as a reviewing court, should afford great deference. The Comptroller, on the other hand, insists that the finding of the tax court was an "overly broad exemption from tax" which was legally erroneous and properly reversed by the circuit court.

Specifically, the Comptroller contends that the tax court's decision was grounded upon a legally erroneous interpretation of the interplay between the two controlling statutes at hand—Md.Code Ann. Art. 81 § 316(c) (now codified as § 316) and 15 U.S.C. § 381 (1976). These statutes govern the ability of a state to tax a foreign corporation conducting business within its borders.

Art. 81 § 316(c) provides:

The remaining net income, hereinafter referred to as business income, shall be allocated to this State if the trade or business of the corporation is carried on wholly within this State, but if the trade or business of the corporation is carried on partly within and partly without this State so much of the business income of the corporation as is derived from or reasonably attributable to the trade or business of the corporation carried on within this State, shall be allocated to this State and any balance of the business income shall be allocated outside this State. The portion of the business income derived from or reasonably attributable to the trade or business carried on

within this State may be determined by a separate accounting where practicable, but never in the case of a unitary business; however, where separate accounting is neither allowable nor practicable the portion of the business income of the corporation allowable to this State shall be determined in accordance with a three-factor formula of property, payroll and sales, in which each factor shall be given equal weight and in which the property factor shall include rented as well as owned property and tangible personal property having a permanent situs within this State and used in the trade or business shall be included as well as real property. The Comptroller of the Treasury shall have the right in those cases where circumstances warrant, to alter any of the above rules as to the use of the separate accounting method or the formula method, the weight to be given the various factors in the formula, the manner of valuation of rented property included in the property factor and the determination of the extent to which tangible personal property is permanently located within the State.

15 U.S.C. § 381 provides in pertinent part;

*Imposition of net income tax*

*Minimum standards*

(a) No State, or political subdivision thereof, shall have power to impose, for any taxable year ending after September 14, 1959, a net income tax on the income derived within such State by any person from interstate commerce if the only business activities within such State by or on behalf of such person during such taxable year are either, or both, of the following:

(1) the solicitation of orders by such person, or his representative, in such State for sales of tangible personal property, which orders are sent outside the State for approval or rejection, and, if approved, are filled by shipment or delivered from a point outside the State; and

(2) the solicitation of orders by such person or his representative, in such State in the name of or for the benefit of a prospective customer of such person, if orders by such customer to such person to enable such customer to fill orders resulting from such solicitation are orders described in paragraph (1).

We recently addressed the standards of appellate review of a Tax Court's decision in *Comptroller of the Treasury v. World Book Childcraft International,* 67 Md.App. 424, 508 A.2d 148 (1986). There, the substance of the appeal was the finding of the tax court that the Comptroller had failed to sustain its burden of proving that the activities of World Book went beyond mere solicitation of orders (exempted by 15 U.S.C. § 381) and thus constituted "doing business" under Md.Code Ann. Art. 81 § 316(c), so as to generate state tax liability.

In reviewing those findings, we enunciated what we consider the proper three-fold analysis which was set forth by the Court of Appeals in *Ramsay, Scarlett & Co. v. Comptroller,* 302 Md. 825, 490 A.2d 1296 (1985). We said:

1. First, the reviewing court must determine whether the agency recognized and applied the correct principles of law governing the case. The reviewing court is not constrained to affirm the agency where its order "is premised solely upon an erroneous conclusion of law."

2. Once it is determined that the agency did not err in its determination or interpretation of the applicable law, the reviewing court next examines the agency's factual findings to determine if they are supported by substantial evidence, *i.e.,* by such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* At this juncture, the *Ramsay, Scarlett* court reminds us that "it is the agency's province to resolve conflicting evidence, and, where inconsistent inferences can be drawn from the same evidence, it is for the agency to draw the inference."

3.   Finally, the reviewing court must examine how the agency applied the law to the facts.  This, of course, is a judgmental process involving a mixed question of law and fact, and great deference must be accorded to the agency. The test of appellate review of this function is "whether, ... a reasoning mind could reasonably have reached the conclusion reached by the [agency], consistent with a proper application of the [controlling legal principles]." *World Book, supra,* at ——, —— (citations omitted).  We shall now examine the implicit finding of the tax court that Bender was not "doing business" and the ruling of the circuit court reversing that decision in light of the threefold analysis of *Ramsay, Scarlett* as explicated in *World Book.* Because we hold that the tax court committed an error of law in its interpretation of the federal statute, we shall remand the case to the circuit court with instructions to remand to the tax court for findings consistent with a proper construction of 15 U.S.C. § 381.  We explain.

1.   *The application of law*

The tax court, in its interpretation of the federal statute, 15 U.S.C. § 381, reached the conclusion, which we empha-size is a *legal* conclusion, that "the apparent basis for 15 U.S.C. 381 was a belief on the part of Congress that while solicitation by itself does not create a sufficient nexus to a state to render a corporation liable for taxes, when com-bined with certain related activities it moves beyond the constitutionally protected realm of interstate commerce and becomes 'doing business' within a given state."

After examining the evidence in this case [2] and concluding that "Bender's solicitation and printing operations [were]

---

2.  The evidence in this case consisted of the fact of Bender's business arrangement with Port City Press (PCP), a Maryland printing corpora-tion, which provided publishing services to Bender on an ongoing basis.  It was undisputed below that Bender occasionally sent repre-sentatives to Maryland to consult with the staff of PCP on various aspects of their business relationship and further, that in order to facilitate production and reduce costs, Bender provided PCP with

completely unrelated to one another," the court proceeded to examine whether Bender was "doing business" under the Maryland statute. In this analysis, however, the tax court implicitly excluded consideration of Bender's solicitation activities. It held: "In the case at bar, the storage of paper supplied to PCP, which [Bender] did not even control, *had nothing to do* with petitioner's eventual sale of its finished product through the mails from out of state." (Emphasis added). In sum, the court concluded that:

> It does not appear that Congress intended a totally un-related aspect of a corporation's business to combine with solicitation so as to yield tax liability in a given state.

Comptroller insists that that court's legal interpretation of the federal statute was erroneous, and that we, as a reviewing court pursuant to Md. Code Ann. Art. 81 § 229(*o*)[3] must "reverse, remand or modify" it. We agree.

There is no support whatever for the tax court's interpretation of 15 U.S.C. § 381. Neither the statute itself nor interpretive case law would preclude a state from considering "solicitation" along with other intra-state business activities in determining whether tax liability exists. We have examined the cases cited in the tax court's opinion for the above statement of Congressional intent behind 15 U.S.C. § 381, specifically *Olympia Brewing Co. v. Department of Revenue*, 511 P.2d 837 (Or.1973), *cert. denied*, 415 U.S. 976,

---

paper which the latter then stored for use in filling Bender's orders. It was also established below that Bender, whose principal offices are located in Albany, New York, solicited orders for its publications from customers in Maryland through commission salesmen and through the mails and that such orders were sent to Bender's principal office where, upon approval, they were filled by mailing the requested materials back into Maryland.

**3.** Art. 81 § 229(*o*) provides:

In any case, the circuit court for the county ... shall determine the matter upon the record made in the Maryland Tax Court. The circuit court ... shall affirm the Tax Court order if it is not erroneous as a matter of law and if it is supported by substantial evidence appearing in the record. In other cases, the circuit court ... may affirm, reverse, remand, or modify the order appealed from.

94 S.Ct. 1561, 39 L.Ed.2d 872 (1974) and do not find that they support the proposition for which they are cited. The Maryland Tax Court's apparent reliance on the distinguishing features of *Olympia* (where tax liability was imposed) for the proposition that evidence of solicitation, when combined with evidence of *related* activities, is the key in determining whether a corporation is doing business, is misplaced in that the tax court concluded that the

apparent basis for 15 U.S.C. Section 381 was a belief on the part of Congress that while solicitation by itself does not create sufficient nexus to a state to render a corporation liable for taxes, when combined with certain *related* activities it moves beyond the constitutionally protected realm of interstate commerce and becomes "doing business" within a given state.[4]

The legislative history of 15 U.S.C. § 381 makes clear that the act was intended to protect out-of-state companies, having "no other business activities within the state," that are engaged in interstate commerce and whose activities are limited to the "mere solicitation of orders within a state." Although the legislative history cites examples

---

4. We have also examined numerous cases which specifically discuss or allude to the federal statute, but generally, these cases merely discuss § 381 in conjunction with state "doing business" statutes; none support the formula articulated by the tax court. *See, e.g., Heublein, Inc. v. South Carolina Tax Commission,* 409 U.S. 275, 93 S.Ct. 483, 34 L.Ed.2d 472 (1972); *Herff Jones Co. v. State Tax Commission,* 247 Or. 404, 430 P.2d 998 (Or. 1967); *Hervey v. AMF Beaird,* 250 Ark. 147, 464 S.W.2d 557 (Ark.1971); *Tonka Corporation v. Commissioner of Taxation,* 284 MN. 185, 169 N.W.2d 589 (1969); *Hawes v. William L. Bonnell Co.,* 116 Ga.App. 184, 156 S.E.2d 536 (1967); *Coors Porcelain Co. v. State,* 517 P.2d 838, 183 Colo. 325 (1974); *Iron Fireman Manufacturing Co. v. State,* 445 P.2d 126, 251 Or. 227 (1968); *Jantzen, Inc. v. District of Columbia,* 395 A.2d 29 (D.C.App.1978); *Drackett Products Co. v. Conrad,* 370 N.W.2d 723 (N.D.1985); *Chattanooga Glass Co. v. Strickland,* 244 Ga. 603, 261 S.E.2d 599 (1979); *Gillette Co. v. State Tax Commission,* 56 A.D.2d 475, 393 N.Y.S.2d 186 (1977), *aff'd,* 45 N.Y.2d 846, 410 N.Y.S.2d 65, 382 N.E.2d 764 (1978); *Indiana Department of Revenue v. Kimberly Clark,* 275 Ind. 378, 416 N.E.2d 1264 (S.Ct.Ind.1981); *Sjong v. State Department of Revenue,* 622 P.2d 967 (S.Ct.Alaska 1981) (appeal dismissed, 454 U.S. 1131, 102 S.Ct. 986, 71 L.Ed.2d 284 (1984)).

where "immunity provisions of § 381 will not be available ...," it recognized that:

[w]hether business activities other than those described in the bill constitute a sufficient basis for the imposition by a State or political subdivision thereof of a net income tax on income derived from interstate commerce is left for future determination by the Congress, or in the absence of congressional action, by the courts.

S.Rep. No. 658, 86th Congress, 1st Session, U.S. Code Cong. & Ad. News, 1959, p. 2548, 2554.

We observe that courts of other jurisdictions, in defining the scope of "solicitation" under the statute, have reached opposite results, *i.e.*, some advance a narrow interpretation of the term, while others construe it liberally. The Pennsylvania court in *United States Tobacco Co. v. Commonwealth of Pennsylvania*, 478 Pa. 125, 386 A.2d 471, 478, *cert. denied*, 439 U.S. 880, 99 S.Ct. 217, 58 L.Ed.2d 193 (1978), relying on the Congressional statement of legislative intent, disagreed with those courts "which have concluded that 'solicitation' is to be narrowly construed" and interpreted § 381 broadly, so that all activity which is "inextricably related to solicitation" falls within the protection of the statute.

To the contrary, courts in Oregon and Arkansas have expressly accorded solicitation a narrow construction. *See, e.g., Herff Jones Co. v. State Tax Commission*, 247 Or. 404, 430 P.2d 998, 1001 (Or.1967) and *Hervey v. AMF Beaird, Inc.*, 250 Ark. 147, 464 S.W.2d 557 (Ark.1971) ("[w]hen we consider the purpose of the legislation and the language of the act, we cannot give the term 'solicitation' [a] broad interpretation.... The legislative history of the act clearly indicates that a narrow construction of the term ... was intended by Congress." 464 S.W.2d 561, 562).

It is not necessary for us at this juncture, however, to resolve the dichotomy between the courts as to the degree of relationship between activities which fit within the scope of solicitation, for the tax court here expressly found that Bender's solicitation and printing operations were complete-

ly *unrelated* to one another. We shall, therefore, leave for another day the determination of related versus unrelated activities as constituting solicitation, be that a question of law, of fact, or a mixed question of law and fact.

Instead, our task is to decide whether the tax court properly applied the law in implicitly concluding that Bender was not "doing business" in the state. In order to do so, we shall conduct our own examination of the Congressional purpose behind the statute.

The plain operation of 15 U.S.C. § 381, as explained by the legislative history, is intended to work as follows:

> If the out-of-State company has no other business activities within the State other than (i) business activities described in paragraphs (1), (2), and (3) of subsection (a), and (ii) sales in the State, or the solicitation of orders for sales in the State, of tangible personal property on its behalf by one or more independent contractors, the out-of-State company shall qualify for the immunity of subsection (a).

S.Rep. No. 658, 86th Congress, 1st Session, 1959 U.S. Code Cong. & Ad. News, p. 2548, 2554. One commentator, expounding on the scope of 15 U.S.C. § 381, affirms this reading:

> The act provides in effect that the states are prohibited from taxing nonresidents on income derived from business activities within the state if the activities consist only of solicitation of orders for the sale of tangible personal property and the orders are approved and filled from without the state. Solicitations and sales by independent contractors are not to be deemed business activities of the putative taxpayer. Businesses immunized from taxation by the act are also protected from retroactive levies, except as already assessed.

*Note*, 75 Harv.L.Rev. 953, 1008 (1961).

### The Tax Court's Mistake

■ Having examined the federal statute from a historical standpoint, we return to the *Ramsay, Scarlett* three-

pronged analysis elucidated in *World Book*. We hold that the tax court failed to recognize and apply the correct principles of law governing the case. We believe that in determining whether a foreign corporation is doing business, the Comptroller and the tax court may consider "solicitation" along with related or unrelated activities conducted within this state.

As the tax court recognized, there was little, if any, dispute of fact in the case. We need not, however, examine the tax court's factual findings to determine if they were supported by substantial evidence (step 2 in *Ramsay*) since the correct principles of law were neither recognized nor applied.

■ We ought not and shall not decide whether, when applying correct principles of law, Bender was or was not "doing business." That is a matter within the expertise of the tax court. Therefore, the case must be remanded to the tax court with instructions that they reconsider the evidence of Bender's activities with a proper understanding of 15 U.S.C. § 381—that is, one that considers both evidence of solicitation and the other intrastate activities in tandem.[5]

We note, for the benefit of the circuit court, that while that court recognized and applied the correct law,[6] it im-

---

**5.** The tax court, in determining whether Matthew Bender is subject to tax liability under Md. Code Ann. Art. 81 § 316(c), may consider evidence of solicitation along with the fact that: (1) Bender had an ongoing arrangement with Port City Press during the years 1975–1980 and that the dollar amount of the business involved in the printing ranged from $1,600,000 to $2,700,000; (2) Bender maintained a supply of its own paper at all times at PCP, which ranged in value from approximately $550,000 to $1,200,000 annually; (3) as many as 4 to 5 Bender employees visited the PCP plant at various times throughout the year, some employees making as many as eight trips annually; (4) PCP, from 1975–1980, mailed a monthly tax service publication of Bender's directly to customers from PCP's plant; and (5) the dollar volume of the tax service that PCP mailed exceeded $2 million annually.

**6.** The circuit court rejected the tax court's reading of 15 U.S.C. § 381, and framed the issue before it as:

properly substituted its judgment for that of the tax court in finding that Bender was doing business in the state. The proper course of action, given the court's recognition that an error of law had been committed, would have been for the circuit court to remand the case to the tax court for an analysis of the facts in light of a proper interpretation of 15 U.S.C. § 381 (Md.Code Ann. Art. 81 § 229(*o* )); *O'Donnell v. Bassler,* 289 Md. 501, 514–15, 425 A.2d 1003 (1981).

JUDGMENT VACATED; CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY WITH IN-STRUCTIONS TO REMAND TO THE MARYLAND TAX COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO ABIDE THE RESULT.

[W]hether the Maryland Tax Court was clearly erroneous in its finding that "Congress did not intend a totally unrelated aspect of a corporation's business to combine with solicitation so as to yield tax liability in a given state."

Finding that the court had so erred, the circuit court reasoned, Nowhere in the statute is there language prohibiting a state from imposing a tax where there are activities which in combination with solicitation would constitute "doing business."

Considering the activities of Bender in the state cumulatively, the court stated, "the conclusion is that the mere solicitation standard has been exceeded, particularly when considered in conjunction with solicitation activities."